IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES FITZPATRICK, | ) | CASE NO. 3:12-cv-1345 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to consent of the parties. (Doc. 16). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff James Fitzpatrick's application for Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court **REVERSES** and **REMANDS** the decision of the Commissioner.

I. PROCEDURAL HISTORY

On February 27, 2009, Plaintiff James Fitzpatrick ("Plaintiff" or "Fitzpatrick") applied for Disability Insurance benefits. (Tr. 10, 54, 127-128). Fitzpatrick alleged that he became disabled on November 17, 2007, due to pain from a back, neck, and shoulder injury. (Tr. 150).[1] Plaintiff's application for Disability Insurance benefits was denied initially and on reconsideration. (Tr. 62-65, 70-74). Plaintiff filed a written request for a hearing before an

---

[1] Plaintiff applied for Social Security Income but was denied at the initial stage of review on March 9, 2009 because income requirements were not met, and Plaintiff did not appeal. (Tr. 26, 56).

administrative law judge on December 13, 2009. (Tr. 75-76). Administrative Law Judge Richard Laverdure (the "ALJ") presided over the hearing in Lima, Ohio on August 23, 2010. (Tr. 10, 24-53). Plaintiff, represented by counsel, appeared and testified. (Tr. 26). Vocational expert ("VE"), Carl Hartung, also appeared and testified. (Tr. 26, 39-42, 44-48).

On November 8, 2010, the ALJ issued his decision that Fitzpatrick was not disabled, based on the application of the five-step sequential analysis.[2] (Tr. 10-18). Plaintiff filed a request for review of this decision by the Appeals Council. (Tr. 121-123). The Appeals Council denied the request for review on March 29, 2012, resulting in the ALJ's decision as the final decision of the Commissioner. (Tr.1-3). Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), Plaintiff

---

[2] The Social Security Administration regulations require an ALJ to follow a five-step sequential process determine if a claimant has a "disability" and is entitled to benefits under the Social Security Act. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has outlined the five steps as follows:

(1) The claimant must show no engagement in substantial gainful activity. If he is working for profit, then he is not disabled.

(2) The claimant must show his impairment(s) is severe, thus limiting his ability to do basic work. If he does not show severe impairment, then he is not disabled.

(3) Based on medical evidence alone, claimant can show that his impairment meets the specific symptom and functional limitation requirements of one of the nine listings in appendix 1. 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.00. If this is shown, claimant is found disabled regardless of age, education, or work experience.

(4) The impairment must prevent claimant from performing past relevant work. If claimant is able to perform past work he is not disabled.

(5) The ALJ then has the burden to show that the claimant has the residual functional capacity and vocational factors to perform other work existing in the national economy to determine that he is not disabled.

*Abbott v Sullivan,* 905 F.2d 918, 923, 926 (6th Cir. 1990).

seeks judicial review of the Commissioner's final decision related to Disability Insurance benefits.

## II. PERSONAL BACKGROUND INFORMATION

Fitzpatrick was born on July 4, 1968 and was 39 years old at the time of his alleged onset of disability. (Tr. 17, 127). Thus, for Social Security purposes, Fitzpatrick was considered a "younger individual" (age 18-44). *See* 20 C.F.R. § 404.1563(c). Plaintiff completed high school, attended one year of college, and completed Law Enforcement Academy. (Tr. 156). His past work experience includes: propane delivery driver, mobile home lot utility worker, store laborer, police officer, protective signal installer, telephone maintenance mechanic, test driver, and welder. (Tr. 17, 40-42, 151-152, 159-160).

## III. MEDICAL EVIDENCE[3]

Plaintiff visited the emergency room on April 24, 2007, reporting that he blacked out while backing up his truck at work. (Tr. 222-228). The emergency room doctor's review of symptoms indicates that Fitzpatrick had syncope, but was negative for myalgia or arthralgia as well as numbness, weakness or tingling of the extremities. (Tr. 222). The basic metabolic profile was normal, while the head CAT scan and EKG were unremarkable. (Tr. 224).

Fitzpatrick was treated the same day by Dr. Lundeen, a Certified Independent Medical Examiner, for an injury that occurred on April 19, 2007, that involved lifting a camera from a mount at work. (Tr. 316, 325). Dr. Lundeen diagnosed Fitzpatrick with a sprain of the neck, shoulder/arm, lumbar region, and thoracic region. (Tr. 316). Dr. Lundeen continued to monitor

---

[3] The following is a summary of the medical evidence relevant to the undersigned's decision. It is not intended to fully reflect all of the evidence the undersigned took into consideration in reaching its ruling.

3

Fitzpatrick with monthly visits as well as treatment that included medication and physical therapy. (Tr. 216-321, 326-335, 356-356, 359-364, 367-369, 374, 379-380, 385-398, 416-426). Physical therapy notes indicate that Fitzpatrick reported decreased symptoms and pain and increased range of motion. (Tr. 229-230).

Fitzpatrick was back to full-time and overtime work by September 2007. (Tr. 326). However, he stopped work in November 2007 due to pain in the neck, back and shoulders, that he presumed to be aggravated by heavy lifting and repetitious movement at work. (Tr. 29, 332).

A November 2007 MRI of the lumbar spine showed mild canal stenosis from L4 through S1 which appeared predominantly due to short pedicles; disc bulging from L4 to L5; and left asymmetric protrusion from L5 to S1. (Tr. 246). A December 2007 MRI of the cervical spine showed single level degenerative disc disease at C5-C6 with associated spondylosis and broad-based protrusion causing at least a moderate degree of central canal stenosis. (Tr. 244). In December 2007, Dr. Lundeen reviewed the cervical spine MRI noting the large disc protrusion at C5-C6 and herniated nucleus pulposus. (Tr. 334). He continued Fitzpatrick's medications. (*Id*.).

Fitzpatrick was evaluated by Dr. Mark Fulton, neurosurgeon, on February 28, 2008 per Dr. Lundeen's request for consultation. (Tr. 271). Dr. Fulton noted that the "motor exam is somewhat compromised by pain but with coaxing is grossly symmetric and normal." (Tr. 272). In addition, Fitzpatrick was briskly hyperreflexic in his upper and lower extremities and Hoffmann's sign was present. (*Id.*). Dr. Fulton reviewed the cervical MRI and interpreted that the C5-C6 bulging did not appear to be causing any significant spinal cord or nerve root

4

compression. (*Id.*). His impressions indicated that the hyperreflexia was out of proportion to the films and could be a baseline normal for Fitzpatrick. (*Id.*).

An evaluation for the Bureau of Workers' Compensation ("BWC") was completed by Dr. Christopher Cannell on April 11, 2008. (Tr. 247-250). Dr. Cannell conducted a physical exam and diagnosed a sprain in the thoracic and lumbar back, right shoulder, and neck. Work restrictions were outlined as sedentary, with lifting and carrying no more than 10 pounds occasionally and five pounds frequently; no bending, stooping, squatting, kneeling, crouching, or crawling; occasional stair climbing, no ladder climbing; no activity above the shoulder level with the right upper limb; no more than two hours standing and walking during an eight-hour work day; and an ability to change positions every 30 minutes. (*Id.*).

An independent medical evaluation was completed for the BWC in August 2008 by Dr. Joseph Rusin, including a review of medical records and examination. (Tr. 253). Dr. Rusin reported that Fitzpatrick had difficulty walking and holding a cane in his right extremity; was diaphoretic; hyperreflexic and positive for weakness in triceps; hyperreflexic in lower extremity; and appeared to have progressive myelopathic symptomatology. (Tr. 254). He concluded that the clinical exam correlated with the earlier MRI. (*Id.*). Dr. Rusin's report referenced sprains in Plaitiff's thoracic and lumbar back, right shoulder, and neck. (Tr. 253). He opined that there were no limitations for the sprain; however, Fitzpatrick would not be capable of doing any remunerative type of work. (Tr. 255).

Fitzpatrick visited the emergency room on September 22, 2008, due to thoracic back pain. The records indicate a normal exam and x-ray. (Tr. 262-263). He was released with medication for chronic back pain. (Tr. 266).

Fitzpatrick had a follow up exam with Dr. Fulton on September 29, 2008, to review a new cervical MRI taken that day. (Tr. 267, 269). Dr. Fulton indicated that the MRI showed no focal disc herniation and no evidence of spinal cord compression or intrinsic lesion. (Tr. 267). Dr. Fulton determined that the hyperreflexia was likely a baseline due to the lack of structural etiology, and concluded that the injury was a chronic myofascial strain. (*Id.*) Dr. Fulton reported that Plaintiff did not have a surgical option. (Tr. 268).

Dr. Lundeen completed an Estimated Functional Capacities Evaluation on January 19, 2009. (Tr. 377-378). Dr. Lundeen reported that Fitzpatrick could occasionally lift and carry up to 10 pounds, push/pull seated and standing, bend, squat, crawl, and reach about shoulder level. He could also sit, stand, as well as alternate sitting and standing for three hours in a work day. (Tr. 277). Dr. Lundeen sent a letter to Darla Kaikis, Esq. on February 12, 2009, indicating that from October 2008 to February 2009 medications were usually effective, yet Fitzpatrick had not reached maximum medical improvement. (Tr. 382-384).

In January 2009, Dr. James Hoover completed a BWC evaluation of Fitzpatrick. At that time, Fitzpatrick reported continued neck, back, shoulder, and arm pain, made better by medication, sitting, or lying. (Tr. 273). Dr. Hoover opined that Fitzpatrick had reached a treatment plateau and had no restrictions based on objective findings. He also noted that exam findings were inconsistent with the degree of pain complaints asserted by Plaintiff. (Tr. 274).

A clinical interview was conducted by Sudhir Dubey, Psy.D., on May 11, 2009. (Tr. 278-283). The Disability Assessment Report indicates a diagnosis of pain disorder with general medical and psychological factors. (Tr. 282). Dr. Dubey reported mild impairment in Plaintiff's ability to understand, remember, and follow instructions. Plaintiff was able to carry out simple,

6

complex, and multi-step (3 part) requests. (*Id.*). Fitpatrick was mildly impaired in his ability to maintain attention, concentration, persistence and pace to perform simple repetitive tasks. (Tr. 282). Plaintiff's ability to relate to others and to withstand stress and pressure associated with day-to-day work were not impaired. (Tr. 283).

An additional disability evaluation was conducted on June 4, 2009, by Michael Lindamood, M.D. (Tr. 298-303). At this evaluation, Fitzpatrick reported continued lower and upper back pain, with the upper right back and shoulder area more symptomatic than the left. He denied any radiation of the pain to lower or upper extremities. (Tr. 298). The examination revealed diffuse muscular tenderness to even minimal palpation, particularly over the right scapular, right trapezius, and right sacroiliac area. (*Id.*). He complained of discomfort at the extremes of back range of motion testing. He was able to weight-bear equally on both lower extremities and did not require an ambulatory aid yet moved slowly. (*Id.*). Lower extremities showed limitation of internal and external rotation. (Tr. 299). Upper extremities examination showed normal shoulder motion and shoulder stability. (*Id.*). In addition, Dr. Lindamood reported that Plaintiff's hand grasp, manipulation, pinch and fine coordination skills were nonremarkable. (*Id.*). Based on objective data alone, Dr. Lindamood was unable to make any specific recommendations regarding Plaintiff's ability to perform work-related activities. (*Id.*). Dr. Lindamood reported chronic soft tissue back pain status post soft tissue back injury and no evidence of lumbar radiculopathy. (*Id.*).

In July 2009, W. Jerry McCloud, M.D., completed a Physical Residual Functional Capacity Assessment. (Tr. 304-311). Dr. McCloud outlined that Plaintiff could: occasionally lift and carry no more than 20 pounds; frequently lift and carry no more than 10 pounds; stand or

7

walk with normal breaks for about 6 hours; sit with normal breaks for about 6 hours; and, push or pull without restriction. (Tr. 305). His recommendations were based on a current exam that showed normal strength and range of motion in Plaintiff's upper extremities, slight decrease in strength and range of motion in knees and hips, limited range of motion in neck and lumbar spine, diffuse muscle tenderness to minimal palpation, and a normal gait. Dr. McCloud also considered an August 2008 physical exam that showed difficulty walking and the 2008 cervical spine MRI that showed diffuse disc protrusion at the C5-C6 level in reaching his conclusions. (*Id.*).

Fitzpatrick followed up with Dr. Fulton on August 28, 2009. (Tr. 414-415). Dr. Fulton reported that Plaintiff's ailment was unlikely a progressive degenerative neurologic condition since symptoms began with a traumatic episode. (Tr. 414). Dr. Fulton indicated that Plaintiff's complaints of back and leg symptoms while being briskly hyperreflexic in the arms made a spinal lesion less likely. (*Id.*). He went on to speculate that the possibility of syringomyelia could explain Plaintiff's symptoms. (*Id.*). However, cervical imaging was not impressive. Due to persistent symptoms, he recommended re-imaging of the cervical and thoracic spine. (*Id.*). In October 2009, Dr. Fulton reviewed the follow-up imaging, which revealed no intrinsic lesion in the spinal cord. (Tr. 409). He did note a small disc protrusion on Plaintiff's left side at C4, but qualified that it would not explain the symptoms Plaintiff described. (*Id.*). Imaging also showed slight degenerative change in the discs but it was not considered a surgical lesion. (*Id.*).

In October 2009, Bruce Goldsmith, Ph.D., documented that Fitzpatrick alleged no worsening of symptoms. Dr. Goldsmith concluded that the documents on file with the SSA were consistent with this information. (Tr. 399). On November 21, 2009, Dimitri Teague, M.D. also

8

reviewed the records for the SSA and indicated that new records were consistent with the prior file information and affirmed Dr. McCloud's previous assessment on July 16, 2009. (Tr. 400).

On September 2, 2010, Dr. Lundeen wrote a letter to Fitzpatrick's attorney stating that Plaintiff's neck injury resulted in a loss of fine motor function in his hands and Plaintiff's grasp was measured at about 10% of normal for his size, age and development. (Tr. 427). He also indicated that neurosurgery was an option. (*Id*.).

## IV.  VOCATIONAL TESTIMONY

At the hearing the ALJ posed three questions to the VE to address Fitzpatrick's work capacity. (Tr. 43-48). The ALJ's first two hypothetical questions focused on the potential for sedentary or light jobs, unskilled, with limitations to sitting and standing, lifting, carrying, repetitive grasping, and no ladders, ropes, or scaffolds. (Tr. 43-47). In the third hypothetical the ALJ described an individual limited to "sedentary work that would permit alternating sitting or standing for five minutes every 30 minutes." (Tr. 48). He also included restriction for ladders, ropes, scaffolds, foot controls, and pedals. (*Id*.). The ALJ's ruling was based on VE testimony in response to these hypothetical questions. (Tr. 17-18).

## IV.  ALJ's DECISION

The ALJ made the following relevant findings of fact and conclusions of law:

. . .

2. The claimant has not engaged in substantial gainful activity since November, 17, 2007.

3. The claimant has the following serve impairments: obesity and chronic soft tissue pain.

    4.       The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1.

    5.       After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a range of sedentary work. Specifically, he must have the option to alternate sitting and standing for 5 minutes every 30 minutes, and he can perform no above-shoulder work with the right upper extremity.

    6.       The claimant is unable to perform any past relevant work.

. . .

    10.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

    11.      The claimant has not been under a disability, as defined in the Social Security Act, from November 17, 2007, through the date of this decision.

(Tr. 12-18) (internal citations omitted).

## V. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial

evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  See *Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  See *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Id*.  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  See *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility.  See *Garner*, 745 F.2d at 387.  However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  See *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VII.  ANALYSIS

Plaintiff submits this case for remand and/or reversal on two grounds.  First, Fitzpatrick claims that the ALJ erred in his evaluation of Plaintiff's pain, upper extremity limitations, and credibility.  Plaintiff asserts that the ALJ failed to consider required factors in his evaluation and

11

Fitzpatrick should be found disabled.[4]  Second, Plaintiff asserts that the ALJ's hypothetical to the vocational expert was incomplete and, therefore, insufficient as substantial evidence to support the ALJ's step five disability denial.

### A.  Factors Relevant to Symptoms and Credibility

Fiztpatrick asserts that the ALJ erred in evaluating his pain, upper extremity limitations, and credibility in finding that he was not disabled.  "An ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525 (6th Cir. 1997)).  The ALJ's findings based on his determination of credibility shall be accorded great weight.  *Walters*, 127 F.3d at 531.  The ALJ's assessment of credibility must be supported by substantial evidence. *Id*. To determine credibility, the ALJ must consider the entire case record.  S.S.R. 96-7p, 1996 WL 374186, at *1 (1996).  The ALJ's credibility determination must include clear reasons for the finding and state specific reasons, from evidence in the case record, for the assigned credibility weight.  S.S.R. 96-7p, at *2; *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

In evaluating symptoms, the ALJ shall consider information about the individual's prior work record, statements about his symptoms, evidence submitted by treating and nontreating sources, as well as observations by other individuals.  20 C.F.R. § 404.1529(c)(3). Lastly, in assessing credibility, the ALJ must consider factors including the degree to which the individual's statements are consistent with the medical findings, the individual's prior statements

---

[4]  Plaintiff cites S.S.R. 97-9p in Plaintiff's Brief on the Merits, within the Issues Presented and an Argument heading.  (Pl. Br. at 1, 7-8, 10).  The Court presumes the Plaintiff meant S.S.R. 96-7p as referenced elsewhere.

to the agency, and other information in the case record, as consistency is a strong indicator of credibility.  S.S.R. 96-7p, at *5.

In this case, the ALJ found that Plaintiff had the severe impairments of obesity and chronic soft tissue pain.  (Tr. 12).  He also established that Fitzpatrick had the residual functional capacity to perform a range of sedentary jobs, with specific limitations, which left Plaintiff unable to perform his past work.  (Tr. 14, 17).  The ALJ asserted that medical evidence could support some of Plaintiff's symptoms; however, it did not support the severity of limitations that the Plaintiff alleged.  (Tr. 16).

In considering the evidence to determine credibility, the ALJ must consider the objective medical evidence as well as factors relevant to the symptoms, including:

   (1)   The individual's daily activities;

   (2)   The location, duration, frequency, and intensity of the individual's pain or other symptoms;

   (3)   Factors that precipitate and aggravate the symptoms;

   (4)   The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

   (5)   Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

   (6)   Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and

   (7)   Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

S.S.R. 96-7p, at *3; *See Felisky*, 35 F.3d at 1038.

13

Fitzpatrick contends that the ALJ was conclusory in disregarding his statements regarding his pain and did not address the necessary factors relevant to symptoms. S.S.R. 96-7p, at *3; *See Felisky*, 35 F.3d at 1038. The ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not credible to the extent they [we]re inconsistent with the [his] residual functional capacity assessment." (Tr. 16).

The Court finds that the ALJ properly considered the necessary factors regarding Plaintiff's symptoms and their effects. The ALJ's decision addressed the factors based on Fitzpatrick's statements and the medical evidence, as follows:

(1) Daily activities: The ALJ referenced Fitzpatrick's statements about limits in movement, including sitting and standing, the need for assistance with personal care, and that he does not do household chores. (Tr. 16). The ALJ determined in his decision that activities of daily living were mildly limited, referencing Plaintiff's report that he watches TV, reads, cares for pets, and can care for his own personal hygiene. (Tr. 13).

(2) The location, duration, frequency, and intensity of pain/symptoms: The ALJ referenced Fitzpatrick's statement about extreme pain in his neck, back, shoulders, and severely limited movement. The ALJ also assessed Fitzpatrick's report of hand tremors and spasms, and cited conflicting medical reports. (Tr. 16).

(3) Factors that precipitate and aggravate symptoms: The ALJ cited Fitzpatrick's report that lifting causes unbearable pain and that he can only sit and stand for short periods of time. These limits are further referenced in the limitations identified in the residual functional capacity. (Tr. 14, 16).

(5) Treatment, other than medication, the individual receives or has received for relief of pain/symptoms: The ALJ considered Fitzpatrick's testimony that on a bad day he reports that he has to stay in bed. (Tr. 16).

(6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms: The ALJ considered Fitzpatrick's report of the use of a cane; however, Plaintiff also reported that it was not prescribed by a doctor. (Tr. 16).

The undersigned did not find reference to medication within the ALJ's decision; however, the ALJ's discussion of the remaining factors was robust. These factors support the ALJ's decision on Fitzpatrick's credibility.

Fitzpatrick's next claim asserts that his report of pain and decreased range of motion is consistent with medical evidence. Plaintiff specifically referenced Dr. Lundeen's treatment notes and Neurosurgeon Dr. Fulton's description of Fitzpatrick's pain as "really disabling" and "debilitating." (Pl. Br. at 9). However, Plaintiff's reliance upon these opinions is unavailing. The ALJ found Dr. Lundeen's opinion had little weight because it relied heavily on Fitzpatrick's subjective complaints. (Tr. 16). Dr. Lundeen's treatment notes and 2009 letter indicate that medications were usually effective. (Tr. 382-384). Also, in contrast to Plaintiff's assertion, Dr. Fulton found that medical imaging did not explain the severity of symptoms that Plaintiff describes. (Tr. 15, 409).

Plaintiff goes on to assert that the BWC evaluations gave credence to his pain complaints. This is only true in part. Dr. Cannell opined that Fitzpatrick could perform sedentary work with some restrictions. (Tr. 250). The ALJ gave some weight to this opinion, yet found slightly less limited postural functions and overhead reaching in Plaintiff's residual functional capacity. (Tr. 15-16). Further, the ALJ accorded Dr. Rusin's opinion little weight due to the inconsistency with the record as a whole. (Tr. 16). Dr. Rusin opined that there were no limitations for Plaintiff's arm, back, and neck sprains, yet he cold not work. (Tr. 255). The ALJ concluded that Dr. Rusin's opinion relied heavily on Plaintiff's complaints. (Tr. 16). Also contrary to Plaintiff's assertion, Dr. Hoover opined that Fitzpatrick had reached a treatment plateau and would have no work restrictions. (Tr. 274). Dr. Hoover stated that his examination

15

findings and objective evidence were inconsistent with Plaintiff's degree of pain complaints. (Tr. 15, 274).

Fitzpatrick also claims that the ALJ did not give consideration to his upper extremity complaints. To the contrary, the ALJ considered Plaintiff's upper extremity limitations; however, he did not find the symptoms to the degree of severity Plaintiff contends. (Tr. 17). The ALJ specifically referenced hyperreflexic symptoms in his analysis of Dr. Fulton's findings. (Tr. 15). The ALJ implicitly credited Dr. Fulton and Dr. Lindamood's findings, as evident by the use of their records in assessing the credibility of SSA physicians, Dr. Cannel and Dr. Rusin. (Tr. 15-16). However, the ALJ specifically discredited Dr. Lundeen's allegation that fine motor function in Plaintiff's hands was impaired. (Tr. 16). He referenced the contradiction from Dr. Lindamood's evaluation in which Plaintiff denied problems with grasp or manipulation and testing was unremarkable. (Tr. 16, 299). The ALJ only accorded Fitzpatrick's subjective complaints limited weight. (Tr. 14). However, the ALJ specifically included an above-shoulder restriction in the residual function capacity, demonstrating that Plaintiff's alleged symptoms were accommodated to some extent. (Tr. 17).

### B. Reliance on Vocational Expert's Testimony

Finally, Plaintiff asserts that the ALJ's denial of benefits at step five of the disability evaluation process was not based on substantial evidence. In a Social Security benefits claim, the plaintiff bears the burden to establish a prima facia case of disability. *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). The burden then shifts to the Commissioner to show at step five, that the claimant has the capacity to perform work in the national economy. *Id*. This burden must be met with a finding supported by substantial evidence. *Varley v Sec'y of Health &*

*Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). At this stage, substantial evidence may be shown through reliance on a vocational expert's testimony in response to a hypothetical question, as long as the question accurately describes the plaintiff's physical and mental impairments and takes plaintiff's limitations into account. *Id*. at 779- 80.

Fitzpatrick contends that the ALJ's residual functional capacity finding was not fully included in the hypotheticals presented to the VE. Specifically, the ALJ determined that the Plaintiff was limited to "no above-shoulder work with the right upper extremity." (Tr. 14). However, none of the three hypotheticals posed to the VE mentioned overhead reaching. (Tr. 44, 45, 48). The ALJ relied on the VE's testimony to determine that the Plaintiff could perform a full range of sedentary jobs. (Tr. 17-8). The ALJ's burden at step five requires that VE testimony be based on an accurate characterization of Plaintiff's impairments. *Varley*, 820 F.2d at 779-80. Therefore, since the hypothetical questions did not include the right side overhead reach limitation to accurately portray Plaintiff's impairment, the ALJ cannot rely on the VE's testimony as substantial evidence that Plaintiff can perform work.

Sedentary work includes exerting force, including "lift, carry, push, pull, or otherwise move objects." (DICOT 132.367-010). The full range of sedentary work, which Plaintiff was deemed to be able to perform could arguably be impeded by an overhead reach limitation. Thus, remand is proper on the grounds that the denial of disability at step five did not meet the ALJ's burden of support by substantial evidence.

17

## VIII.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence.  Accordingly, the Court **REVERSES** and **REMANDS** the case back to the Administration.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: July 10, 2013.

18